UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYLVESTER AGYEAH,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF WORCESTER, CITY MANAGER EDWARD M. AUGUSTUS, DET. SCOTT D. CALHOUN, DET. MICHAEL F. RYDER, OFFICER MICHAEL W. MCGRATH, DET. KYLE S. CORTIS, DET. BRIAN M. PISKATOR, DET. DANA S. RANDALL, and OFFICERS, JOHN DOE 1-3,<br><br>　　　　Defendants. | Civil No. 4:21-cv-40020-MRG |

**ORDER ON PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

GUZMAN, J.

　　For the reasons stated below, the Court OVERRULES Plaintiff's Objection, ECF No. 76, and AFFIRMS the Magistrate Judge's Order denying Plaintiff's Motion to Compel, ECF No. 73.

　　**I.　Introduction and Factual Background**

　　In this action, Plaintiff, Sylvester Agyeah ("Mr. Agyeah") brings civil rights claims against members of the Worcester Police Department ("WPD") for alleged physical abuse, racial discrimination, and violations of his First, Fourth, and Fourteenth Amendment rights. [See Am. Compl., ECF No. 5]. Additionally, Mr. Agyeah brings Monell and supervisory liability claims

1

against the City of Worcester ("the City") and city officials for their alleged failure to investigate or remedy violations of constitutional rights by members of the WPD. [See id.].

The following facts are taken as true from Mr. Agyeah's amended complaint. On April 26, 2018, while driving for a rideshare company in Worcester, MA, Mr. Agyeah saw several individuals approaching a car, hurling obscenities, and attacking the driver. [Am. Compl. ¶¶ 1-3]. Believing he was witnessing a crime, Mr. Agyeah took out his phone and started videorecording the scene. [Id. ¶ 31]. Unbeknownst to Mr. Agyeah, those he believed to be assailants were plain-clothed police officers and members of the WPD's Vice Squad engaging in a "John" sting operation, intending to arrest a suspected prostitution solicitor. [Id. ¶¶ 20-25]. During the sting operation, the officers noticed Mr. Agyeah recording them and approached him. [Id. ¶ 34]. Officers first knocked Mr. Agyeah's phone out of his hand, then confiscated the phone and requested Mr. Agyeah's passcode. [Id. ¶¶ 34-50]. Mr. Agyeah refused to provide the phone's passcode and the officers arrested him. [Id. ¶¶ 50-57].

Mr. Agyeah further alleges that during his arrest, the police used excessive force by slapping his phone, dragging him out of his car, tightly handcuffing him, and bending and twisting his fingers. [Id. ¶¶ 50-83]. Additionally, Mr. Agyeah states that officers addressed him with racial slurs during his arrest and failed to provide Mr. Agyeah medical attention. [Id. ¶¶ 58-91, 127-41]. Mr. Agyeah alleges that officers failed to file two required reports – one for use of force and one for instances when a prisoner at booking complains of injury of abuse at the hands of officers. [Id. ¶¶ 165-91]. Finally, Mr. Agyeah alleges that the WPD and the City failed to investigate the incident and hold the officers accountable. [Id.]. Mr. Agyeah asserts that this failure reflects "[t]he *de facto* policy, custom, and practice of the City and [City Manager Edward Augustus] of not investigating arrestee complaints and failing to hold officers accountable for misconduct." [Id. ¶ 193].

**II.     Procedural History**

Mr. Agyeah filed his amended complaint on February 19, 2021. [ECF No. 5]. Over the course of discovery, the parties met multiple times for depositions. [See ECF No. 76]. At least four of the depositions included testimony regarding an alleged police practice known as a "cop touch." During a "cop touch," an undercover officer posing as a potential prostitution customer intimately touches a suspected sex worker to convince them that the officer is not a member of law enforcement. [See id. ¶¶ 23-25]. Plaintiff's counsel seeks information about the "cop touch" practice to support Mr. Agyeah's Monell claim by demonstrating that the WPD commits widespread constitutional violations and systematically fails to investigate misconduct. [ECF No. 60 at 6]. As an example of the deposition testimony in question, Mr. Agyeah proffers the following regarding the February 9, 2023 deposition of Defendant Detective ("Det.") Scott D. Calhoun:

> Counsel [for Plaintiff] asked Det. Calhoun if targets of prostitution stings had asked him to touch them to demonstrate that he was not an undercover officer. "Oh yeah, they'll ask that," he stated. Asked how he responds to such requests Det. Calhoun answered: "I don't touch them, and usually I can just sort of dance around it and get to the point of, you know, making the sex-for-a-fee deal or not." He denied ever having touched a prostitute in the breast area to convince her that he was not an officer. [. . .] When counsel asked if a superior had ever informed Det. Calhoun it was okay for an officer to touch a suspected prostitute in order to convince her he was not an officer, his counsel objected to the question as "totally irrelevant" and directed him not to answer.

[ECF No. 76 ¶¶ 23-25 (citations omitted)].

In each of the four depositions, Defendants' counsel objected to the "cop touch" questions on the grounds of relevance and investigatory privilege. [ECF No. 76 ¶¶ 26-30]. The Defendants ultimately terminated the depositions, leaving the Plaintiff's questions unanswered. [Id. ¶¶ 23-30]. On March 30, 2023, Mr. Agyeah filed a motion to compel the Defendants to answer the "cop

touch" questions. [ECF No. 60]. This Court referred the motion to Magistrate Judge Hennessy, who held a hearing on the motion on July 27, 2023. [ECF No. 73].

### III. The Magistrate Judge's Findings

At the hearing, Plaintiff's counsel argued that the WPD and the City have a *de facto* policy of a failing to train, discipline, or supervise officers that results in a "broad swath" of constitutional violations, and, therefore, questions about how the WPD and the City respond to other potentially unconstitutional misconduct like the "cop touches" are relevant to Mr. Agyeah's Monell claim. [Mot. Hrg. Audio Tr., ECF No. 73; ECF No. 60 at 6]. Defendants assert that, although the conduct in Mr. Agyeah's case is "generally connected to WPD prostitution investigations" and he brings a Monell claim, he has failed to demonstrate relevance between the "cop touch" questions and his claims, which pertain to unnecessary force, unlawful search and arrest, and First Amendment and due process rights. [ECF No. 61 at 5-6]. Defendants note that Mr. Agyeah denies involvement in prostitution on the day of the incident, and state that, "but for Plaintiff's interference with the arrest of another man, Plaintiff was not subject to investigation for the solicitation of prostitution on that night." [Id.].

Judge Hennessy agreed with the Defendants and denied Mr. Agyeah's motion to compel the deposition questions on the ground that the questions were irrelevant.[1] [Mot. Hrg. Audio Tr.]. Judge Hennessy found that Mr. Agyeah's assertion of a WPD policy of a "broad swath" of constitutional violations was too general of an accusation to establish a relevant connection to the

---

[1] In addition to a moving to compel the deposition testimony, Plaintiff's motion requested costs and attorney's fees for the costs of bringing the motion to compel. [See ECF No. 60]. Judge Hennessy denied the motion as to the deposition testimony, but granted the motion for costs and fees, reasoning that defense counsel's improper refusal to continue the depositions caused Plaintiff to incur costs in filing the motion to compel. [ECF No. 73].

objected questions and Mr. Agyeah's claims. [Id.]. Judge Hennessy noted that a city could be liable if Plaintiff could show that it systematically failed to investigate misconduct, but the misconduct in question has to relate to the Plaintiff's claim. [Id.]. Additionally, Judge Hennessy highlighted that the core of Mr. Agyeah's Monell claim stems from the WPD's confiscation of Mr. Agyeah's phone when he attempted to videorecord the officers, and that Mr. Agyeah has not alleged any conduct that would make police dealings with suspected sex workers relevant to his claim. [Id.]. Finally, Judge Hennessy stated that if the mere presence of a constitutional violation in one's claim made all constitutional questions relevant, relevance would lose all meaning.[2] [Id.].

### IV.    Legal Standard

When a party timely objects to a non-dispositive ruling of a Magistrate Judge on a pretrial matter, the District Judge must modify or set aside any part of the order that is "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a). An order compelling discovery is a non-dispositive ruling. See Fed. R. Civ. P. 72(a). Under the "clearly erroneous" standard, the District Judge must accept the Magistrate Judge's findings of fact and the conclusions drawn from them "unless, after scrutinizing the entire record, [the court] form[s] a strong, unyielding belief that a mistake has been made." Khath v. Midland Funding, LLC, 334 F. Supp. 3d 499, 506 (D. Mass. 2018) (quoting Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999)) (alterations in original). The District Judge reviews pure questions of law *de novo*. Id. (citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010)). When the order concerns questions of both fact and law, District Judges give more deference to the Magistrate Judge's

---

[2] Mr. Agyeah also brought his motion to compel to contest Defendants' assertion of the investigatory privilege, but Judge Hennessy ruled on the motion based on relevance and did not engage in extended argument about the privilege claim. [See ECF No. 73].

factual findings, "though never more deferential than the clear error standard," and a lower level of deference to the Magistrate Judge's legal conclusions. In re IDC Clambakes, Inc., 727 F.3d 58, 64 (1st Cir. 2013).

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. Simply stated, only relevant matter is discoverable. See id. "If a party objects to the relevance of a discovery request, the court may 'become involved to determine whether the discovery is relevant to the claims or defenses.'" Deptula v. City of Worcester, No. 17-cv-40055-TSH, 2018 U.S. Dist. LEXIS 120815, at *7 (D. Mass. July 19, 2018) (quoting In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008)).

"A plaintiff asserting a Monell claim must show there was a municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers; and this custom or policy was the cause of, and moving force behind, the deprivation which she suffered." Diaz v. Devlin, No. 4:16-cv-40039-TSH, 2018 U.S. Dist. LEXIS 56364, at *16-17 (D. Mass. Apr. 3, 2018) (quoting Warren v. Rojas, No. 09-cv-40217-FDS, 2011 U.S. Dist. LEXIS 163726, at *6 (D. Mass. Feb. 17, 2011). To show discovery is relevant to a Monell claim, the information sought must relate to the city's alleged policy or custom that has caused the plaintiff harm. See Diaz, 2018 U.S. Dist. LEXIS 56364, at *16-17. There is a "strong public interest in protecting constitutional rights against violations by others acting under state law" that supports disclosure. Id. at *17. However, even when the contested discovery encompasses the alleged policy, practice, or custom that deprives a plaintiff of a constitutional right, the court may still need to limit the scope of discovery to only relevant material. See Deptula, 2018 U.S. Dist. LEXIS 120815 (finding information requested by plaintiff to be relevant to plaintiff's claims but limiting discovery on the issue to only five specific questions).

V. **Discussion**

Judge Hennessy's determination that Mr. Agyeah's requested deposition questions are irrelevant and non-discoverable was not clearly erroneous or contrary to law.[3] In support of relevance, Mr. Agyeah asserts, "the notion that highly questionable conduct toward suspected prostitutes may well reflect tolerance of equally questionable conduct in operations against their suspected customers is not so conjectural or speculative as to be presumed irrelevant." [ECF No. 60 at 6]. Mr. Agyeah's claims relate to unnecessary use of force, unlawful seizure and arrest, and violations of the First, Fourth, and Fourteenth Amendments. [See Am. Compl.]. They do not relate to the WPD's alleged "cop touch" policy nor to WPD policy on "John" stings. Mr. Agyeah does not state that he was soliciting prostitution. His only connection to any kind of prostitution investigation was that he witnessed a "John" sting. As a result, the alleged policy or custom of questionable conduct in operations against suspected sex workers or customers of prostitution is not relevant to Mr. Agyeah or his claims. If the deposition questions concerned WPD's policies on how officers treat civilians who videorecord police, perhaps that would be relevant. But a claim that a defendant has violated a plaintiff's constitutional rights through a specific policy does not entitle a plaintiff to discovery on any and all allegations of unconstitutional misconduct by the defendant, particularly when that misconduct occurs pursuant to policies that are wholly distinct from the policy that harmed the plaintiff. As Judge Hennessy noted, to find otherwise would render the relevancy requirement of Federal Rules of Civil Procedure 26 meaningless.

VI. **Conclusion**

---

[3] This motion concerns a question of both fact and law as Judge Hennessy had to consider the facts of the complaint and compare them to the facts of the alleged "cop touch" practice to make a legal ruling on whether the "cop touch" questions are relevant to Mr. Agyeah's claims.

The Court finds the Magistrate Judge's denial of Plaintiff's Motion to Compel was not clearly erroneous or contrary to law. Accordingly, the Court OVERRULES Plaintiff's Objection, ECF No. 76, and AFFIRMS the Magistrate Judge's Order denying Plaintiff's Motion to Compel, ECF No. 73.

.

Dated: October 20, 2023

                                                                 /s/ Margaret R. Guzman
                                                                  Margaret R. Guzman
                                                                  United States District Judge